UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

_____
                                    )
GOLDEN BAY ENTERPRISES, INC.,       )
                                    )
            Plaintiff,              )
                                    )   Civil Action No.: CV-00-6977-CBA-JMA
      -against-                     )
                                    )
WALMART STORES, INC.,               )
                                    )
            Defendant.              )
_____ )


**MEMORANDUM IN OPPOSITION TO MOTION BY PLAINTIFF GOLDEN BAY ENTERPRISES L.L.P. MADE BY WILLIS ELECTRIC INC. (SIGNER OF THE SETTLEMENT AND COVENANT NOT TO SUE AGREEMENT IN THE ABOVE REFERENCED MATTER)**

**Golden Bay's Statement of Facts**

It noted that Willis Electric Incorporated (Willis Electric) is not the Defendant as stated in the BRIEF of Golden Bay Enterprises LLP. (Golden Bay).  Willis Electric is a signer of the Settlement and Covenant Not to Sue Agreement (the agreement).

In the motion papers filed by Golden Bay, a very poor and partial copy of the agreement is presented.  It is believed that the actual Appendix I of the agreement is not attached.  This actual Appendix I is attached hereto as Exhibit 1.

At number 3 Plaintiffs state that the agreement was "prepared by or on behalf of Willis Electric."  This appears to be an unreasonable statement (and heresay).  The undersigned attorney was involved in the litigation and an associate of the firm McGlew and Tuttle, PC was involved

1

in typing some of the text used in the final agreement. However, the content came from discussions between the parties with the initial content specified and mutually agreed to by the parties and further changes specifically specified by Golden Bay. The associate that did the typing did not propose a covenant not to sue, such that infringement of U.S. 5,645,342 would never again be raised (or litigated), this was discussed by and mutually agreed to by the parties.

There is nothing to support the contention that one party "prepared" the agreement. The undersigned notes that SECTION 7 – COOPERATION, which Golden Bay bases this motion on and on which they allege there is a dispute, was specified by Golden Bay or the other party Wein Ace Decorative Lamp Co. Ltd. A first version of the agreement being discussed stated:

> 7.1     *Golden Bay, Wein Ace and Willis Electric hereby agree that should any one of Golden Bay, Wein Ace and Willis Electric consider future development of a net lighting string set, Golden Bay, Wein Ace and Willis Electric will discuss the use of the other parties design before such development.*

During discussions the parties (particularly Golden Bay and Wein Ace Decorative Lamp Co. Ltd.) specified a changed version of the future cooperation, which appeared in the final agreement. In each case, the section relates to the future. In the final version, this section (7.1) does not place any obligation on the part of Willis Electric to take any action whatsoever.

Willis Electric can submit statements from Willis Electric employees regarding their intentions, actions and understanding. This would include testimony as to their belief that all issues and conflict as to U.S. 5,645,342 was to end with the settlement and that the settlement was to remove all possibilities of the issue being raised again. However, consideration of such extrinsic evidence (as with the declaration of James Hsi) is directly contrary to what is to be

considered under applicable law as cited by Plaintiffs (Klos v. Lotnicze, 133 F.3d 164 (2d Cir. 1997) on remnant In re Air Crash Disaster Near Warsaw, 1997 WL 833451; Retrofit Partners. I. L.P. v. Lucas Industries, Inc., 201 F.3d 155 (2d Cir. 2000); Peteroit v. S.B. Thomas, Inc., 63 F.3d 1169 (2d Cir. 1995), certiorari denied 116 S.Ct. 1351, 517 U.S. 1119,134 L.Ed.2d 520; Crane Co. v. Coltec Industries, Inc., 171 F.3d 733 (2d Cir. 1999); R.J.E. Corp. v. Northville Industries Corp., 198 F. Supp. 2d 249 (E.D.N.Y.2002); U.S. ex rel. AWL Industries. Inc. v. Site Remediation Services Corp., (E.D.N.Y. 2000); Tucker Leasing Capital Corp. v. Martin Medical Management Inc., 833 F. Supp. 948 (E.D.N.Y. 1993).

**Golden Bay Has Not Identified Any Actual Dispute.**

The Golden Bay BRIEF states that a dispute has arisen between Golden Bay and Willis Electric regarding rights and obligations under the agreement. Although Golden Bay Enterprises Inc. has written letters and has now filed this motion, causing costs and expenses, no actual dispute has been identified. There is no identification of any event which triggered a need for a resolution. There is no statement as to how products were sold or offered for sale immediately after the agreement was entered into and how such events somehow differ from any situation or events which are now occurring years later. There is no explanation as to what obligation Willis Electric has under the agreement which has not been fulfilled. There is no explanation as to what problem has arisen (what the dispute is) and why there is any dispute now and not immediately after the agreement was reached.

It is believed to be undisputed that products that were the subject of the original complaint were being sold and in sales channels immediately following the termination of the

lawsuit.  There is no explanation as to why there was not an immediate dispute, at the time the settlement agreement was entered into.

**Civil Action Number CV – 00 – 6977 Was Settled with Prejudice**

It is not contested that the civil action was settled with prejudice in 2004.  Golden Bay does not contest that they have agreed not to sue Willis Electric regarding patents Golden Bay owned at the time the agreement was made (section 2.2 of the agreement).

The action was settled based on an agreement between Willis Electric (a supplier to the original defendants) on the one hand and Golden Bay Enterprises, LLP and Wein Ace Decorative Lamp Co. Ltd. on the other hand.  The agreement specifically states:

> *WHEREAS the parties now desire to settle their differences, resolve this dispute which is at issue in the Civil Actions, forever discharge this dispute and avoid future intellectual property disputes involving any other inventions, patents, trademarks, trade secrets, or copyrights of Golden Bay and Wein Ace;*

The agreement was to end the lawsuit and did in fact end the lawsuit.  The products at issue continued to be manufactured and sold.  No provisions were made with regard to enjoining or stopping any sale of any product.  It is undisputed that products were being sold (were on the shelf or otherwise in the sales chain) as the agreement was being executed.  Such sales continued thereafter.  If no further payments were required seconds after the agreement was executed, there is no rationale basis to consider that payments would be due years after the agreement was executed.

**Section 3 of the Agreement Indicates That All Payments Have Been Made under the Agreement.**

Section 3 of the agreement indicates the amount of the payment to be made under the agreement from Willis Electric to Golden Bay. It is specified that this payment amount constitutes the total payment to be made to Golden Bay. Specifically, the agreement has the language:

> 3.1 *In settlement of Civil Actions and consideration of the foregoing, Willis Electric agrees to pay to Golden Bay Two Hundred Thirty Thousand dollars ($230,000) after the execution of this Agreement and upon the entry of the dismissal of the Civil Action as herein provided according to the terms of paragraphs 3.2 hereof, which payments, when made, s***hall constitute total payment to Golden Bay hereunder***.* (Emphasis added.)

The clear and ordinary meaning of this plain language of the agreement requires that there be no further payments in consideration for the terms of the agreement (covenant not to sue) and for the settlement of the civil action. As noted in the case law cited by Golden Bay, the plain language of the agreement is to be considered and extrinsic evidence and one party's unstated intentions are not to be considered. This is further specified in SECTION 8.2 of the agreement.

Plaintiffs site further case law which supports the position of Willis Electric that the matter is settled and closed and all payments have been made. Whatever it is that Golden Bay believes is required by "SECTION 7 – COOPERATION" of the agreement it is not acceptable to interpret the contract so as to make the language of section 3.1 nugatory. <u>Chemical Bank v. Affiliated Ins. Co.</u> 815 F. Supp. 2d 115 (S.D.N.Y.).

**The Language "the Patents" Appears Only in the First Whereas Clause and in Section 1.1.**

The first whereas clause of the agreement reads as follows:

*WHEREAS, Mr. Chin Chen Chang has assigned to Golden Bay, the entire right, title, and interest in and to, United States Patent 5,645,342 and counterpart patents and/or applications in other countries all of which are listed on Appendix I, all such patents and applications, including any re-issue, re-examined patent, divisional or continuation applications being hereinafter collectively referred to as the "Patents."*

This whereas clause talks of ownership of particular patents. Based on the plain language of this text the list of Appendix I should be referred to when the terms **the Patents** appear. The only place that the terms **the Patents** appear is in section 1.1 relating to ownership of **the Patents**, namely warranties and a certification as follows:

*1.1   Golden Bay warrants that it is the owner of the entire right, title and interest in and to **the Patents** and that it has the absolute right to represent Mr. Chin Chen Chang of Wein Ace and hereby further warrants that Golden Bay shall indemnify Willis Electric, its agents, and customers from any future disputes initiated by or on behalf of itself or Mr. Chin Chen Chang of Wein Ace.*

(Emphasis added.)

This use of the terms shows a direct relationship between the warranty as to ownership of **the Patents** and the whereas clause giving background as to such ownership of **the Patents**. There is no other reference to **the Patents**. However, the actual Appendix I (see Exhibit 1) makes it clear that the list relates to what is agreed to in the "release paragraph 2 above." The second paragraph

6

of the release section (section 2.2) is the covenant made by Golden Bay and Wein Ace not to sue Willis Electric. However, section 7.1 does not refer to **the Patents**.

In Golden Bay's BRIEF discussion starts speaking of the term "Patents" and then proceeds to use the term "the patents" and incorrectly indicates that SECTION 7 contains provisions relating to "**the patents**" (this is not correct). It can be noted that SECTION 7 does not use the term ("the Patents") of the first "WHEREAS" clauses of the agreement. Instead the agreement references Patents of Golden Bay. The missing article "**the**" clearly indicates that the topic has not been raised earlier. There is no reference to patents already discussed (no reference to "the Patents" and no prior antecedent basis is provided for "Patents" in the text).

**Section 7.1 Presents Plain Language Discussing the Possibility of Cooperation in the Future**.

Section 7.1 is entitled "COOPERATION" and is clearly directed to future events. The section uses plain language indicating future occurrences and the obligations of Golden Bay and Wein Ace. The future events include Golden Bay obtaining future Patents. Section 7.1 also relates to a future event with regard to Willis Electric, namely deciding to use a new design (represented by a future Patent). Specifically, there is no contention by any party that the products involved in the lawsuit were enjoined or restricted as to sale upon the agreement going into effect. Products were being sold and are believed to have been in stock and on the shelves in stores or in the supply chain at the time the parties signed the agreement. The net light strings that were produced were and continue to be based on the same product that was originally disputed. It is believed that the point of the agreement was to provide an early resolution of the

matter so that the customer Wal-Mart was not in the middle of this and could continue with the sale of products.  With the covenant not to sue, Willis Electric was assured that the matter would not be raised again.  With this background, the plain language of the agreement indicates that the future event with regard to Willis Electric is a decision to make a product not based on the original dispute but a new product, which could potentially use future Patents of Golden Bay.  The Patents of Golden Bay would of course be future Patents and not **the** Patents of Golden Bay that they cannot sue Willis Electric on.  There is no reasonable interpretation that a patent subject to the covenant not to sue is somehow involved.  Golden Bay agreed not to sue with regard to any of **the** patents they owned at the date of the agreement or any application they owned at the date of the agreement.  Golden Bay's interpretation of section 7.1 would make the language of section 2.2 nugatory as Willis Electric had paid valuable consideration to not be sued under any of the patents which Golden Bay owned at the time of the agreement.

**Willis Electric Does NOT have an Affirmative Duty under Section 7.1 of the Agreement.**

As noted above, Golden Bay has not provided an explanation as to what dispute has given rise to the filing of this motion.  Plaintiff's Counsel comes up with the creative substitute language that subsequent to the date of the settlement agreement, "should Willis Electric consider the use of the patents of Golden Bay, they can do so under 'a mutually agreed term'".  However, there is no theory and no interpretation under which it can be said that Willis Electric has an affirmative obligation to act under section 7.1.

Section 7.1 only presents a requirement or obligation on Golden Bay or Wein Ace to allow the use of patents (believed clearly to be future patents).  The language does not require

anything from Willis Electric.

**Conclusion**

The civil action brought by Golden Bay was settled many years ago. The settlement was with prejudice and a substantial amount of money was paid to Golden Bay with this constituting the total payment to Golden Bay under the settlement agreement. Golden Bay agreed not to sue Willis Electric or its customers as to any of the patents that it owned at the time of the settlement agreement. Willis Electric did not agree to be obligated in any way under SECTION 7.1. The plain language of the agreement indicates that in the future Golden Bay is obligated under SECTION 7.1 to allow use of patents under a mutually agreed to term. Willis Electric is under no obligation to accept such use or to take any action whatsoever under section 7.1.

The motion brought by Golden Bay is without merit and has necessarily involved cost and expense for Willis Electric. It is requested that costs and fees be awarded to Willis Electric given the frivolous nature of this motion.

Respectfully submitted,

_____
John James McGlew (JM 9656)
McGLEW AND TUTTLE, P.C.
Attorneys for Willis Electric Incorporated,
1 Scarborough Station Plaza
Scarborough, New York 10510-9227

Dated: April 3, 2008                   Telephone: (914) 941-5600
69916.Opp

9