```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
GOLDEN BAY ENTERPRISES, INC.,          :
                                       :
            Plaintiff,                 :        Report & Recommendation
                                       :
            -against-                  :        00-CV-6977 (CBA) (JMA)
                                       :
WALMART STORES, INC.,                  :
                                       :
            Defendant.                 :
-----------------------------------------------------X
```

A P P E A R A N C E S:

    James W. Badie, Esq.
    521 Fifth Avenue Suite 3300
    New York, New York 10175-3399
    *Attorney for Plaintiff*

    John J. McGlew, Esq.
    McGlew and Tuttle, P.C.
    1 Scarborough Station Plaza
    Scarborough, New York 10510-9227
    *Attorney for Willis Electric, Inc.*

**AZRACK, United States Magistrate Judge:**

At the end of a settlement each party usually leaves the negotiation without total satisfaction. In this case, they seem to have parted with different understandings of the meaning of their agreement. A potential defendant, an entity that was not sued in this patent infringement action, believes that it paid $230,000 for peace. Plaintiff, however, asserts that the money was paid for damages up to the date of the settlement and that a single provision, a cooperation clause, left the future unsettled. The motivation for Plaintiff's request in March 2008 that the Court exercise its continuing jurisdiction as set forth in an agreement effective since September 2004 is not apparent from the submissions. The details follow.

1

Golden Bay sued Walmart on November 27, 2000 for patent infringement, the instant lawsuit.[1]  Having obtained all right and interest in patent no. 5,645,342 issued July 8, 1997 to Chin Chen Chang for a decorative Christmas tree illumination assembly, it alleged that Walmart manufactured, used and sold infringing products without specifically identifying the products.

The record does not indicate how Golden Bay came to know that the alleged infringing Christmas lights were manufactured by Willis Electric Co. However, James Hsi, President of Golden Bay, avers that he entered into a settlement agreement with Willis Electric after a discussion with its President, Henry N.S. Wu.  According to Hsi, the two agreed that Golden Bay would withdraw the action for past damages and that the parties would discuss future use if Willis Electric were to decide to use the patent.  Hsi's understanding of the agreement's terms does not alter or change the effect of the agreement itself, which was a tripartite arrangement.

Thereafter, on September 20, 2004, Golden Bay, a New York corporation located in Hempstead, New York, Chin Chen Chang of Wein Ace Decorative Lamp Co., Ltd., located in China, and Willis Electric, a New York corporation located in Taipei, Taiwan, signed a settlement and covenant not to sue agreement, the operative terms of which have been preceded by recitals in the form of "whereas" clauses.  These clauses express the parties' understandings of the facts and circumstances which motivated their agreement.

They acknowledged Chang's assignment of the patents, including the one in suit and those listed in appendix 1, to Golden Bay, which had brought the instant lawsuit and another

---

[1] Walmart filed an answer which contained a counterclaim.  Doc. #4.  John J. McGlew, Esq., who represents Willis Electric, appeared for Walmart.  Although the Clerk closed the case in response to the instant settlement agreement, doc. #29, the docket does not indicate a resolution as to the infringement claim against Walmart nor its counterclaim.

2

one, 01 CV 2208 (SLT) (JMA), against other sellers of alleged infringers, Inliten LLC and Atico International.[2] Walmart, Inliten and Atico were referred to as third party beneficiaries, each of which had filed answers that denied infringement of the patents in suit, but they did not observe that Walmart's answer contained a counterclaim. The parties also acknowledged that Chang had applied for and received other patents, without specifying them, and that Willis Electric, which had never filed a pleading, "contends that no Golden Bay patent is infringed and that one or more Golden Bay patents are wholly or partially invalid..." Doc. #31 pt. 6 at 1.[3] Most importantly, they expressed their intentions to settle the matter permanently:

> WHEREAS the parties now desire to settle their differences, resolve this dispute which is at issue in the Civil Actions, forever discharge this dispute and avoid future intellectual property disputes involving any other inventions, patents, trademarks, trade secrets or copyrights of Golden Bay and Wein Ace...

*Id*.

The parties divided the terms of their agreement into eight (8) sections, each with a heading. In section 1 Golden Bay warranted to Willis Electric that it is the owner of all of the right, title and interest in the patent and agreed to indemnify Willis Electric, its agents or its customers from any disputes initiated by or on behalf of itself or Chang. Section 2 sets forth the releases and covenants not to sue, section 3 the consideration of $230,000 and the terms for the payment and section 4 the agreement to dismiss within three (3) business days of the bank wire transfer. In section 5 the parties saddled this Court with maintaining jurisdiction over them and

---

[2]They indicated the date of the filing of the instant action as on or about March 13, 2001, which is incorrect, and the filing date of the other lawsuit as May 21, 2001, which is also incorrect. The docket sheet for 01 CV 2208 bears a filing date of April 9, 2001.

[3]The five pages of the settlement agreement are not numbered.

their agreement and designated New York law as governing its enforceability and interpretation.[4]
Through section 6 they bore their own costs and waived interest in the pending cases or any action to enforce the agreement, and in section 7, consistent with the declaration of intent to achieve a permanent and everlasting global settlement, they expressed their spirit of future cooperation as follows:

> 7.1 In the future, should Willis Electric decide to consider the use of Patents of Golden Bay or Wein Ace, Golden Bay and Wein Ace shall allow the use of such Patents under a mutually agreed term.

Doc. #31 pt. 6 at 3. Section 8 set forth general provisions, none of which are at issue.

According to Golden Bay, if Willis Electric had purchased future rights to use the patents, the future cooperation clause would have been unnecessary. Logically, therefore, its inclusion in the agreement signifies that the consideration was for damages up to the date of the agreement, *i.e.,* that the parties did not intend to settle future claims. The Court's research discloses that relevant principles of New York law do not support Golden Bay's understanding of the settlement agreement.

> Under New York law, "[a] settlement agreement must be interpreted as any other contract." *Olympic Tower Assoc. v. City of New York,* 183 A.D.2d 406, 583 N.Y.S.2d 263, 264 (1992); *Rainbow v. Swisher*, 72 N.Y.2d 106, 531 N.Y.S.2d 775, 776, 527 N.E.2d 258, 259 (1988). Courts should generally give effect to the expressed intentions of the parties in entering into the agreements. *Care Travel Co. v. Pan American World Airways,* 944 F.2d 983, 987 (2d Cir. 1991); *Hartford Accident & Indemnity Co. v. Wesolowski*, 33 N.Y.2d 169, 350 N.Y.S.2d 895, 897-98, 305 N.E.2d 907, 909 (1973).
>
> Courts should first look to the language of the agreement to determine intent. *Hartford,* 350 N.Y.S.2d at 898-99, 305 N.E.2d at 910. In this initial inquiry courts must determine whether the language of the agreement is unambiguous on its face. "Contract

---

[4]Actually, they designated "the United States District Court for the District of New York," whereas in the stipulation of dismissal they stated that the Court retained jurisdiction of the parties as to the settlement. Doc. #29.

4

> language is unambiguous if it has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Metropolitan Life Insurance Co. V. RJR Nabisco, Inc.,* 906 F.2d 884, 889 (2d Cir. 1990) (*quoting Breed v. Insurance Co. Of North America,* 46 N.Y.2d 351, 413 N.Y.S.2d 352, 355, 385 N.E.2d 1280, 1283 (1978) (brackets as they appeared in *Metropolitan Life*); *Care Travel,* 944 F.2d at 988 (Agreement is unambiguous when it is capable of one meaning when viewed by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology generally understood in the particular trade or business.) (*quoting Eskimo Pie Corp. V. Whitelawn Dairies, Inc.,* 284 F. Supp. 987, 994 (S.D.N.Y. 1968). Contract language is not ambiguous merely because the parties attribute to it differing interpretations; nor is it ambiguous where one party urges an interpretation that strains the language beyond its ordinary meaning. Id. (quoting *Bethlehem Steel Co. V. Turner Construction Co.,* 2 N.Y.2d 456, 161 N.Y.S.2d 90, 93, 141 N.E.2d 590, 593 (1957). If the language of an agreement is unambiguous on its face, the parties' rights under the agreement should be determined solely by the terms in the agreement. *Care Travel,* 944 F.2d at 987-88 (*quoting Metropolitan Life,* 906 F.2d at 889). Evidence concerning the commercial environment giving context to the agreement may be used to ascertain the parties' intent, however, even if the language of the contract is unambiguous. *Chase Manhattan Bank v. First Marion Bank,* 437 F.2d 1040, 1046 (5th Cir. 1971); *In re Rudolph's Will,* 123 N.Y.S.2d 731, 733-34 (Supr. Ct. 1953). If the agreement is ambiguous on its face, courts may ascertain its meaning with the aid of parol evidence. *Care Travel,* 944 F.2d at 988.

*Interspiro USA, Inc. v. Figgie Int'l, Inc.,* 815 F. Supp. 1488, 1501-1502 (D. Del. 1993) (N.Y. law). These principles pertain primarily to whether a court should entertain parol evidence to settle the meaning and interpretation of contract language. They guide this Court to the conclusion that it should not resort to Hsi's affidavit to understand the meaning and effect of the future cooperation clause, *i.e.,* the language contained therein is not ambiguous. They do not, however, delimit the framework for determining whether Golden Bay has a claim for breach of this settlement agreement.

Initially, Willis Electric expresses surprise at the instant proceeding and a failure to grasp the reason for it because the agreement does not require Willis Electric to do anything other than what has already occurred, payment of the consideration. Willis Electric contends that Golden

5

Bay has failed to identify any dispute or to specify what obligation under the agreement has not been fulfilled. The allegedly infringing products were in the marketplace immediately after the agreement was signed, yet no proceeding was brought then. The agreement, which contains no injunction against the sale of products, settled the case with prejudice. These observations and assertions merely emphasize the existence of an issue rather than resolving it.

Willis Electric also cites the language in §3.1 that the consideration constituted total payment to Golden Bay under the agreement as evidence that Golden Bay's reliance on the future cooperation clause is misplaced. Nothing in the language employed in §3.1 indicates or signifies whether the consideration was for past damages or future damages or both. This observation does not resolve the issue.

Finally, Willis Electric requests an interpretation premised on comparing the language used in different sections. In the first whereas clause, in acknowledging the Chang assignment to Golden Bay of the intellectual property contained in appendix 1, the parties referred collectively to this intellectual property as "the 'Patents'". They reiterated this language in §1.1 where Golden Bay warrants its ownership rights in the Patents. By contrast, however, in the future cooperation clause the parties did not use "the Patents" but merely "Patents." Given the cooperation clause's focus on the future, Willis Electric argues that the deliberate change to "Patents" distinguishes the reference from the prior use of "the Patents" so as to refer to Golden Bay's future patents in contrast to the intellectual property referenced in appendix 1. Golden Bay characterizes this argument as untenable because the meaning of the language in the cooperation clause is unambiguous and the only patents at issue were the patent in suit and any patents based thereon all of which are listed in appendix 1.

As the court observed in *Augustine Medical, Inc. v. Progressive Dynamics, Inc.,* 194 F.3d 1367 (Fed. Cir. 1999), a case which concerned the interpretation of an agreement that settled a patent infringement litigation under Minnesota law,

> [I]t is the burden of the parties entering into a settlement agreement to expressly reserve in the agreement any right that they wish to maintain beyond the date of the settlement of agreement. The Supreme Court stated in [*United States v. William Cramp & Sons, etc.,* 206 U.S. 118, 27 S.Ct. 676, 51 L.Ed. 983 (1907)] that "general language...indicates an intent to make an ending of every matter arising under or by virtue of the contract. If the parties intend to leave some things open and unsettled, their intent so to do should be made manifest." *Id.* at 128, 27 S.Ct. [at 678-679].

*Id.* at 1373. This rule has been applied to interpret a settlement agreement which ended a patent infringement litigation under the law of New York. *Pactiv Corp. v. Dow Chemical Co.,* No. 04-CV-81 (N.D.N.Y. Feb. 3, 2005) (2005 Westlaw 4542861 at *2).

In this case, the parties' first manifestation of intent appears in the "whereas" clause quoted *supra* at 3: They expressed an unequivocal intent to put an end to this and future disputes concerning this patent.

Golden Bay would undoubtedly maintain that the manifestation of intent may be found in the language of the cooperation clause; as written, it applies to future uses of "such Patents." The clause does not stand alone, however. It has context within the entire agreement. "Contract provisions should not be read in isolation; rather, 'the entire contract must be considered, and all parts of it reconciled.'" *RJE Corp. V. Northville Industries Corp.,* 198 F. Supp.2d 249, 262 (E.D.N.Y. 2002) (citations omitted), *aff'd*, 329 F.3d 310 (2d Cir. 2003).

The parties' primary manifestation of intent may be found in section 2 of the agreement which, as previously noted, sets forth in three subsections a release and two covenants not to sue, all of which are actually multiple releases and covenants not to sue. In section 2.1, in summary

7

description, Golden Bay and Wein Ace released every nonparty that might have had a relationship to Willis Electric from liability for everything up to the date of the agreement. Section 2.2 sets forth a covenant not to sue relevant to this application:

> 2.2 Golden Bay and Wein Ace covenant not to sue Willis Electric and its related entities, especially Willis Electric customers and Willis Electric's Third Party Beneficiaries, as to any U.S. and Foreign patents currently assigned to Golden Bay or licensed to Golden Bay and any other U.S. or Foreign patents issuing to Golden Bay as assignee based on patent applications filed on or before the date of execution of this Agreement.

Section 2.3 sets forth a covenant not to sue concerning trade dress and trademark infringement, neither of which are raised in this application.

"A release is a provision that intends a present abandonment of a known right or claim. By contrast, <u>a covenant not to sue also applies to future claims</u> and constitutes an agreement to exercise forbearance from asserting any claim which either exists or which may accrue." *McMahan & Co. V. Bass*, 250 A.D.2d 460, 461, 673 N.Y.S.2d 19, 21 (1st Dep't 1998) (citations omitted; emphasis supplied), *lv. denied,* 92 N.Y.2d 1013, 707 N.E.2d 439, 684 N.Y.S.2d 484 (1998); 19A N.Y. Jur.2d *Compromise, Accord, and Release* §61. "If two parties sign a covenant not to sue each other, then a dispute arising out of the conduct covered by that agreement cannot provide the basis for a justiciable controversy, and the case must be dismissed." *Joao v. Cenuco, Inc.,* 376 F. Supp.2d 380, 382 (S.D.N.Y. 2005); *see, e.g., Arista Technologies, Inc. v. Arthur D. Little Enterprises, Inc.,* 125 F. Supp.2d 641, 655 (E.D.N.Y. 2000).

Applying these venerable and relevant principles to the instant application, Golden Bay seeks damages premised upon Willis Electric's sale of products which allegedly infringe a patent(s) covered by a covenant not to sue. Unless the Court wants to allow the tail to wag the proverbial dog, a future cooperation clause without specific language that removes it from a

covenant not to sue does not govern the meaning and effect of the covenant not to sue. Under the circumstances, Golden Bay has not demonstrated a breach of the settlement agreement nor otherwise presented cause for reopening this case.

Based on the foregoing, I respectfully recommend Golden Bay's motion to reopen, doc. #31, be denied.

## NOTICE

Any objections to this Report and Recommendation must be filed with the clerk of the Court, with a copy to the undersigned, within ten (10) days of th receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. §636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

Dated: June __, 2008
Brooklyn, New York

JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE

9